Asa M. **CHRISTIAN** et al., Appellants,

v.

**BOARD OF EDUCATION OF STRONG SCHOOL DISTRICT NO. 83 OF UN-ION COUNTY** et al., Appellees.

Nos. 20381, 20447.

United States Court of Appeals,
Eighth Circuit.

April 16, 1971.

Jack Greenberg, James M. Nabrit, III, Norman J. Chachkin, New York City,

John W. Walker, Philip E. Kaplan, Walker, Kaplan, Lavey & Mays, Little Rock, Ark., for appellants.

H. Derrell Dickens, William I. Prewett, El Dorado, Ark., for appellees.

Before GIBSON and BRIGHT, Circuit Judges, and McMANUS, Chief District Judge.

BRIGHT, Circuit Judge.

Appellants, parents of black children and suing on behalf of those children, challenge the method and pace of school desegregation in response to orders of the district court directed to the Board of Education of the Strong School District located in Union County, a rural county in Arkansas. Having reviewed the record on this appeal, we remand this case to the district court with instructions to continue its supervision of the desegregation procedures employed by the appellee Board of Education.

Plaintiffs originally commenced the above-styled action in February of 1968. They sought to enjoin the continued operation of racially segregated schools within the school district. In October, 1969, the district court ordered the Board to effectively desegregate the schools, but on a somewhat delayed basis —at "the earliest practical time, but, in no event, later than September of 1970." Plaintiffs appealed that order to this court, requesting a summary reversal. We granted them relief. In an unreported opinion, we said, in part:

Upon review of the abbreviated record before us it is clear that the district court has not taken steps to *effectively* implement a desegregated unitary school system and is operating contrary to law and the Constitution of the United States. The only defense presented is that this is the first time the district has been compelled to act by court decree and that it would be impractical and detrimental to the educational process to require immediate desegregation. These claims can no longer serve as deterrents to immediate compliance with the law. Alexander v. Holmes, [County Bd. of Ed.] supra [396 U.S. 19 [90 S.Ct. 29, 24 L.Ed.2d 19] (1969)]. It has long been incumbent upon the school boards to voluntarily accomplish an end to segregation without judicial prodding. See Brown v. Board of Educ., [347] U.S. [483 (1954) [74 S.Ct. 686, 98 L.Ed. 873].

The district court is ordered to direct the Strong School District to file with the court on or before January 7, 1970, a complete plan to convert the present organization of the public schools of the Strong School District to a unitary, non-racial system. The plan shall provide and be implemented as set forth below:

1. The present dual bussing system shall be eliminated and a unitary bussing system established no later than the beginning of the second semester of the present school year.

2. The present practice of employing and assigning faculty and other personnel on the basis of race will be discontinued immediately. Teachers and other personnel presently employed by the district shall be reassigned beginning with the second semester of the present school year so as to eliminate all vestiges of segregation. The reassignment process shall be completed no later than the opening of the 1970–71 school year.

3. The "freedom of choice" plan under which students currently choose the school which they will attend shall be eliminated no later than the beginning of the second semester of the present school year. The new plan for the attendance of students on a non-racial basis shall be put into effect no later than the second semester of the present school year and shall be made fully effective no later than the commencement of the 1970–71 school year. [Christian v. Board of Education of Strong School District No. 83, No. 20038, December 8, 1969]

Thereafter, in compliance with our mandate, the district court approved a new plan for desegregation to be effective at the opening of the second semester of school, which was delayed to January 19, 1970. The essentials of the Board's amended plan, which the district court approved with modification on January 12, 1970, provided, among other things, for (a) the elimination of freedom of choice; (b) the elimination of dual bus routes; and (c) that students in grades seven through twelve would attend Gardner School, previously an all-black school, and students in grades one through six would attend Strong School, previously an all-white school. The plan envisioned teacher assignments to promote faculty integration. The district court further directed:

> The Court is also aware of the difficulties and will not tolerate any interference on the part of any person or group with the implementation of the plan of operation as approved herein.

The controversy leading to the instant appeal began on January 8, 1970, even before the district court had completed review of a new desegregation plan submitted by the Board in response to this court's prior order. On that date, the Board issued instructions to parents of the students, which provided in part:

> All of grades 1 through 6 will attend the Strong High School, and all of grades 7 through 12 will attend the Gardner High School. The Gardner elementary students and teachers will exchange places with the Strong High School students and teachers.

On that date, plaintiffs filed a motion with the district court seeking to have the Board members cited for contempt on the assumption that this instruction contemplated segregated classes at the "desegregated" school facilities. Eight days later, plaintiffs served interrogatories on the Board, seeking information concerning the operation of the school system for the second semester. The Board objected to the interrogatories and declined to respond to them. On April 9, 1970, plaintiffs filed a second motion to cite the defendant-Board for contempt, contending that unlawful racial discrimination continued in the school system. On April 29, the district court considered the charges made by plaintiffs in their first contempt motion and the defendants' objections to the interrogatories. The court ruled in favor of the Board. The district court noted that the contempt motion was premature for "obviously the school district could not be held in contempt for an order * * * issued on the same day [as] the Motion for Contempt * * *." The district court also sustained the Board's objections to the interrogatories on similar grounds, but ordered the School District to submit a full and complete report of its progress in desegregating the public schools within fifteen days.

The Board filed its report late, on May 20. The district court held a hearing on this report on July 8, 1970. The court reviewed the Board's plans for the forthcoming year and took testimony from both sides. Following this hearing, the district court entered its order dated July 13, approving the operation of the schools for the second semester of the 1969–70 school year "as being in substantial compliance with the orders of * * * [the] Court" and retaining "jurisdiction of this cause." The district court amplified its ruling in a memorandum opinion dated July 31 and a supplementary order dated August 3, 1970, directing the School Board and its new superintendent and assistant superintendent to operate the schools for the next year as a "unitary system" and "without regard to racial considerations."

The black school children, through their parents, prosecute this appeal from the district court's order entered April 29, 1970 (appeal No. 20381), and the order of the district court dated July 13, 1970 (appeal No. 20447). In consider-

ing the latter, we deem the district court's memorandum opinion, as well as its order of August 3, 1970, as part of the court's order of July 13, 1970, for purposes of this appeal.

Appellants present these contentions on appeal: (1) the district court should have required the defendant-Board to answer plaintiffs' interrogatories; (2) the district court unduly restricted the scope of the July hearing concerning the operation of the schools; (3) the district court erred in pronouncing the Board's operation of the schools during the second semester to be in substantial compliance with its earlier desegregation order; and (4) the district court permitted the Board to unduly delay filing of the report on its operations with the district court. Items 1 and 4, from the substantive standpoint, represent aspects of the same issue.

In considering these issues, we first examine the Board's compliance with the district court's January 12 desegregation order. The testimony establishes that the school administration initially assigned students into classes in each of the first six grades alphabetically. Since black students greatly outnumber whites in the school district, this method of assignment resulted in white students comprising a minority in each of the classes. Almost immediately, a number of white parents withdrew their children, 81 in number, from the elementary grades. In some classes, only a few white children remained. The Board of Education, in order to prevent a complete loss of white students through this "white flight", authorized reassignment of students in the elementary grades so that in at least one classroom in each grade white students predominated over blacks. Other sections in each grade then became all-black. In its report submitted to the court, the School Board listed the following make-up of elementary grades:

| | | | | | | |
|---|---|---|---|---|---|---|
| 1st grade | Section | I | 10 | colored | 12 | white |
| | Section | II | 19 | colored | 0 | white |
| | Section | III | 19 | colored | 0 | white |
| 2nd grade | Section | I | 8 | colored | 15 | white |
| | Section | II | 20 | colored | 0 | white |
| | Section | III | 19 | colored | 0 | white |
| 3rd grade | Section | I | 26 | colored | 0 | white |
| | Section | II | 20 | colored | 0 | white |
| | Section | III | 10 | colored | 17 | white |
| 4th grade | Section | I | 6 | colored | 17 | white |
| | Section | II | 20 | colored | 0 | white |
| | Section | III | 20 | colored | 0 | white |
| 5th grade | Section | I | 35 | colored | 0 | white |
| | Section | II | 9 | colored | 27 | white |
| 6th grade | Section | I | 29 | colored | 0 | white |
| | Section | II | 13 | colored | 19 | white [1] |

It is well settled that this kind of pupil assignment constitutes discrimination in the public schools in violation of the Constitution. In Jackson v. Marvell School District No. 22, 425 F.2d 211 (8th Cir. 1970), we said of this type of classroom assignment: "It is settled doctrine that segregation of the races in classrooms constitutes invidious discrimination in violation of the Fourteenth Amendment to the Constitution." 425 F.2d at 212. The district court indicated its disapproval of this assignment procedure and recognized that *Marvell* represents the rule of law with which all schools boards must comply. The district court's order of August 3, 1970, directed that an assignment of students, as well as faculty, must be made "without regard to racial considerations" as part of the unitary system of operations in the district.

Although the administration of this Board of Education violated constitutional precepts in assignment by race of elementary school children to classes within the school, the record establishes some notable progress in other areas of school desegregation, including dismantling of dual school bussing and desegre-

---

1. This report also noted the following with regard to the teachers:
"There are 3 teachers for each grade, with the exception of the 5th & 6th grades. Each teacher rotates from section to section thus spending ⅓ of her working day with each of the 3 sections. The 5th & 6th grade teachers also rotate from class to class."

gation among faculty members and students in other grades. We agree with the district court's conclusion that the Board operated the schools in substantial compliance with the court's desegregation orders.

◼ We turn next to appellants' contention that the trial court erred in sustaining the Board's objections to plaintiffs' interrogatories. Appellants contend that an early response to these interrogatories would have disclosed improper pupil assignment in the schools. We think appellants' contention is well taken in the light of the facts. The record in this case reveals that members of the white community brought heavy pressure upon the Board to retain some form of black-white segregation, at least in the elementary schools. In the light of the Board's instructions submitted to parents of the children, the plaintiffs were entitled to know whether the Board intended to strictly comply with the directives of the district court. We think it obvious that plaintiffs seeking vindication of their constitutional rights in cases of this nature need to have quick and accurate information and should not be required to rely on incomplete and possibly inaccurate reports obtained from various other sources.

In this case, the court did not receive any report from the Board until the very end of the second semester. Its report came too late to correct the developing problems which we have discussed. Courts must not permit their decrees to be frustrated by actions on the part of school administrations or interferences by others with the enforcement of these decrees. The district court must require an early report by the Board or else permit plaintiffs to present the Board with interrogatories reasonable in number and in their scope of inquiry. The desegregation pronouncement of the United States Supreme Court in Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969), decries any further delays in school desegregation efforts. These delays will continue unless courts insist on strict compliance with orders. As the Court stated in *Alexander*, "the obligation of every school district is to terminate dual school systems at once and to operate now and hereafter only unitary school systems." 396 U.S. at 20, 90 S. Ct. at 29.

◼ Finally, we turn to appellants' complaint that the district court refused to consider other aspects of racial discrimination in the Strong County public schools. The court declined to hear complaints relating to the dismissal of a black teacher, as well as a claim that a black student was subject to more severe disciplinary procedures than usual for white students in the school. The district court noted that each of these individuals had brought a separate action in federal court for relief. It declined to hear any other case, but insisted in confining the hearing to "the plan of desegregation of this school." Having reviewed this record, we find no abuse of discretion by the district court.

The foregoing comments dispose of the issues presented on this appeal. We add only this comment. The fact of "white flight", while constitutionally immaterial, represents a sad fact of life to the Board of Education and the school administrators in this school district. As we have already noted, 81 white children from the elementary grade left the school. In addition, 30 whites left grades seven through twelve. This loss of students translates into a substantial loss of state aid to the school which is based on average daily student attendance. The superintendent and assistant superintendent, who served the school system in the 1969–70 school year, left near the end of the session, apparently because of community friction over the operation of the schools. It appears to this court that it will take the wholehearted cooperation of the entire community, black and white, to save the operation of the Strong public schools and to encourage white parents to continue

utilizing the public schools of this district.[2]

As we have already noted, the district court retains jurisdiction in this matter. We remand this case to the district court for its further supervision in conformity with this opinion. We grant appellants costs, but not attorney's fees.

2. Apparently, white students continue to leave this school at least in the elementary grades. Statistics show that 188 white students in grades one to six enrolled at the beginning of the school semester. At the end of the semester, 107 white students remained. The Strong School District has reported to this court that the commencement of the first semester in the 1970–71 school year showed only 66 white students in the elementary grades.